UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RUTH LIEBOLD, ET AL. | * | CIVIL ACTION NO. 17-815 |
| | * | |
| | * | SECTION: "S"(1) |
| VERSUS | * | |
| | * | JUDGE MARY ANN VIAL LEMMON |
| ALABAMA GREAT SOUTHERN | * | |
| RAILWAY CO., ET AL. | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORDER AND REASONS

Before the Court is the Motion to Compel filed by plaintiffs Ruth and Dan Liebold as personal representatives of the Estate of decedent Kyle Liebold ("Plaintiffs"). (Rec. Doc. 17). For the following reasons, the Motion is GRANTED in part. Oral argument set for January 17, 2018, is hereby cancelled.

Background

This is a lawsuit under the Federal Employer's Liability Act, 45 U.S.C. § 51, arising out of a February 20, 2016, accident when Alabama Great Southern Railway Co. ("AGS")/Norfolk Southern Railroad Co. ("NS" and with AGS "Norfolk Southern") train number 298 struck and killed Kyle Liebold on main track 2 at mile post 186 of the Alabama Division, NE Subdivision, in New Orleans, Louisiana. At the time of the accident, Liebold was employed by Norfolk Southern. On January 31, 2017, Liebold's parents, Ruth and Dan Liebold, filed this lawsuit as representatives of Liebold's Estate and alleged that AGS is responsible for the accident that resulted in Liebold's death. They soon joined NS as a defendant, alleging that AGS is a wholly owned subsidiary of NS. They allege that AGS owns the mainline railroad tracks, employed the train crew operating the

1

locomotive and train at the time of the accident, and was acting under the direction and control of NS. They allege that NS is liable for negligence of AGS.

The issue before the Court at this time is whether the personnel file of Ray Wallace, an employee of Norfolk Southern, is within the scope of discovery in this case. Plaintiffs explain that Liebold was killed while working as a B-3 railroad trainmaster, an entry level "front-line" management position, "primarily tasked with supervising and conducting efficiency testing of locomotive engineers and conductors." At the time of the accident, Plaintiffs say that Liebold was attempting to perform a "banner test," which Plaintiffs describe as follows:

> During a banner test, a supervisor will select a location on the mainline track and shunt the track using a shunting cable. The shunting then mimics to the signal system that something is occupying the track. The signal aspect then displays to the crew travelling down the track the appropriate signal, thus directing the crew to operate at a slower speed sufficient to stop short of any track obstruction. Since the crew is then required to stop short of any obstruction, the supervisor will then place a banner next to the track to serve as a visible obstruction.

According to Plaintiffs, Norfolk Southern policies address the manner in which supervisors should test the operational competence of train crews. The Norfolk Southern Supervisors Guideline for Conducting Efficiency Tests ("Guidelines") state that supervisors should conduct banner tests at various days, times, and locations to maintain unpredictability and should avoid conducting banner tests in close proximity in time or location. The Guidelines require a minimum of four banner tests per month. The Guidelines also provide that "[b]ased on Quarterly Reviews or traffic patterns, the Assistant Division Superintendent may reduce or redirect the required Banner Tests."

Plaintiffs maintain that Wallace was the Assistant Division Superintendent at the time of the incident. In this role, they say, he was a direct supervisor over all division trainmasters. On September 4, 2015, Wallace ordered that B-3s were not allowed to conduct banner tests by

themselves, but were required to be accompanied by a B-4 or higher. On February 1, 2016, via email, Wallace increased the number of banner tests to two per week.

Plaintiffs also say that two witnesses employed as union clerks approached the Liebold family and informed them that Wallace had engaged in unethical conduct during the investigation of Liebold's death. The witnesses say they witnessed an incident where Wallace was confronted by Superintendent Rodney Moore and Division Manager Rodd Reynolds and called a liar with regards to the Liebold investigation. One of the witnesses claims that Reynolds told her the incident had been documented in a letter that had been placed in Wallace's personnel file.[1]

Norfolk Southern describes the accident somewhat differently, saying that the incident occurred soon after Liebold's work shift had ended and there is no indication why he was at the scene at that time. According to Norfolk Southern, as the train approached, the engineer observed a yellow object in the gauge of the track about five car lengths ahead and initiated the emergency brake. The engineer reported that it appeared there was an individual lying face down across the east rail of the track. Because of the speed of the train, there was no time to sound the horn. When the train stopped, the conductor went to the back of the train to investigate and indicated that the object that had been seen appeared to be a railroad employee. Thus, it is Norfolk Southern's position that Liebold was lying across the track prior to the accident for an unknown reason.

Law and Analysis

1. *Scope of Discovery*

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the

---

[1] Plaintiffs say the witnesses have provided sworn statements with regards to the recited facts, but Plaintiffs maintain the statements are privileged. They say they can make the statements available *in camera*. The Court declines the invitation at this time.

needs of the case." Fed. R. Civ. Proc. 26(b)(1). Of note, with the 2015 amendment to Rule 26, it is now clear that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Id. In assessing proportionality of discovery, the following should be considered: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. The advisory committee comments to the 2015 amendment to Rule 26 make clear that the parties and the court have a collective responsibility to ensure that discovery is proportional. The party claiming it would suffer an undue burden or expense is typically in the best position to explain why, while the party claiming the information sought is important to resolve the issues in the case should be able "to explain the ways in which the underlying information bears on the issues as that party understands them." Id. advisory committee comments to 2015 amendment. "The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." Id.

2. *Wallace Personnel File*

Plaintiffs served Norfolk Southern with the following request: "Please produce the personal, personnel, training, discipline, and/or service record of Ray Wallace during his entire period of employment by the Defendant . . . ."[2] Norfolk Southern objected, saying the request was "unnecessarily broad because it exceeds a reasonable factual scope and the basic facts and issues presented in the plaintiffs' Complaint." It also objected to the request as "overbroad, burdensome

---

[2] Plaintiffs also requested "documentation of all disciplinary action taken against Ray Wallace that in anyway relates to Kyle Liebold's death and/or the investigation regarding same performed by AGS/NS." It does not appear from the briefing that Plaintiffs are challenging Norfolk Southern's response to this request.

and amounts to nothing more than harassment and violates this non-party employee's privacy rights . . . ."

In explaining the relevance of the sought after materials, Plaintiffs point to allegedly "mounting coincidences" that Wallace made modifications to banner testing guidelines shortly before Liebold's death, that Liebold was killed in the process of performing a banner test alone, that two witnesses provided unsolicited accounts of Wallace being confronted with lies regarding the Liebold investigation, and that Reynolds informed one of the witnesses that documentation regarding the confrontation is in Wallace's personnel file. Plaintiffs' counsel notes that this is the first time in their experience with railroad cases that they have experienced facts sufficient to show a need to request a manager's personnel file.

Norfolk Southern opposes production of the Wallace personnel file, pointing out that the file contains confidential performance evaluations, salary information, and other private information such as health issues, tax records, and drug test results. They cite numerous cases for the proposition that "[d]iscovery of the personnel files of non-party individual employees presents special concerns about the privacy rights of the individuals involved." Poseidon Oil Pipeline Co. v. Transocean Sedco Forex, Inc., No. CIV.A. 00-2154, 2002 WL 31098543, at *1 (E.D. La. Sept. 18, 2002). They argue that Wallace had nothing to do with the Liebold incident.

The Plaintiffs' request is indeed overbroad. It seeks Wallace's entire personnel file simply because it may contain a record related to Wallace's involvement in the investigation of the Liebold incident and because Wallace made changes to banner test policies that may bear on the facts underlying the Liebold incident (although there is no indication that Plaintiffs believe the personnel file contains documentation regarding Wallace's changes to the banner test policy). Nonetheless, to the extent Wallace's personnel file does contain records related to the Liebold

5

incident or Liebold investigation, such records are relevant and discoverable. To the extent the personnel file contains any documents related to recent changes to the banner test policy, the Court finds that this may also be relevant to Plaintiffs' theory of the case. Any concerns regarding Wallace's privacy as to such records will be adequately protected by a protective order limiting disclosure.

## Conclusion

For the foregoing reasons, the Motion to Compel is GRANTED in part. Norfolk Southern shall review Wallace's personnel record and shall produce, subject to a protective order limiting disclosure, any documents in Wallace's personnel record that relate to (1) Liebold, including but not limited to any disciplinary records relative to that incident or the investigation of Liebold's death, or (2) the 2015 or 2016 changes to the banner test policy. The parties shall confer and jointly submit a proposed protective order limiting disclosure within 10 days. The documents shall be produced within 5 days of entry of the protective order.

New Orleans, Louisiana, this 16th day of January, 2018.

*Janis van Meerveld*
Janis van Meerveld
United States Magistrate Judge